IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GARY W. DAY, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-15-2023 |
| SETH A. ROBBINS, *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Gary W. Day ("Plaintiff") brought a single-count action for legal malpractice, sounding in diversity, against Attorney Seth A. Robbins ("Robbins") and a law firm variously known as Quagliano & Seeger, P.C.; Seeger Faughnan Mendicino, P.C.; and Seeger, P.C. (collectively, "Seeger"). (ECF No. 1.)[1] Thereafter, Seeger brought a Cross-Claim against Robbins for indemnity and contribution. (ECF No. 22.)

Now pending before the Court is Robbins's Motion to Dismiss Cross-Claim, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 29.) The issues have been briefed (ECF Nos. 29–1, 30 & 31), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Robbins's motion will be DENIED.

---

[1] *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). Of note, while Plaintiff alleges that he "resides" in Maryland and that Seeger was first incorporated in Virginia and maintains its principal place of business in the District of Columbia, Plaintiff does not specifically allege Robbins's citizenship. It appears from the face of the Complaint that Robbins maintains a residence in Arlington, Virginia, and since neither Robbins nor Seeger have challenged the Court's subject-matter jurisdiction, the Court assumes that diversity is satisfied. However, the parties are DIRECTED to notify the Court if at any time they become aware of facts that would call the Court's subject-matter jurisdiction into question.

### I.   *Background*[2]

Robbins was a partner and/or corporate officer at Seeger and an attorney for Plaintiff. (ECF No. 1 ¶¶ 4, 6.)  In fall of 2011, Robbins allegedly contacted Plaintiff and advised him about a financial opportunity whereby Plaintiff could receive a commission in exchange for serving as an additional indemnitor on a general indemnity agreement ("GIA") maintained between a construction firm called Persaud Companies, Inc. ("PCI") and Hudson Insurance Company ("Hudson").  (*Id.* ¶ 7.)  Robbins advised Plaintiff that PCI and its owner, Andy Persaud, were "extremely strong financially" and that Plaintiff would be "completely protected" from any loss.  (*Id.* ¶¶ 8, 12.)  Relying on Robbins's advice, Plaintiff agreed to the deal—and he signed the GIA without reading it first.  (*Id.* ¶ 25.)

Robbins had represented to Plaintiff that Plaintiff would have an opportunity to review PCI's proposed projects and would be given the "express right" to approve or disapprove indemnity before any bonds were issued.  (*Id.* ¶ 17.)  Nevertheless, "without [Plaintiff's] knowledge or approval, Hudson issued payment and performance bonds on eleven projects," and "[w]ithout talking to [Plaintiff], Robbins approved the issuance of each of the bonds."  (*Id.* ¶ 27.)

In July 2012, Plaintiff received a letter from Hudson's attorney, advising him that PCI was in default and demanding exoneration.  (*Id.* ¶ 30.)  Thereafter, in January 2013, Hudson sued Plaintiff in the United States District Court for the Eastern District of Virginia.  (*Id.* ¶ 32.) During the course of litigation, Plaintiff learned that (1) despite Robbins's assurances, PCI was actually in "financial ruin"; (2) an escrow company controlled by Robbins had served as funds control agent for PCI and had made substantial loans to PCI; and (3) Robbins had personally

---

[2] The facts are recited here as alleged in the Cross-Claim and, to the extent relevant, as alleged in the Complaint. *See Williams ex rel. Estate of Williams v. United States*, 469 F. Supp. 2d 339, 341 (E.D. Va. 2007) ("When reviewing a cross-claim pursuant to a Rule 12(b)(6) motion, the court must accept well-pleaded allegations as true and must construe the factual allegations in favor of the cross-claimant." (citing *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994))); *cf. Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

provided about $350,000 in an effort to keep PCI afloat. (*Id.* ¶¶ 34, 37.)  Plaintiff eventually settled Hudson's claim against him for $1.7 million.  (*Id.* ¶ 36.)

Plaintiff sued Robbins and Seeger for legal malpractice on July 10, 2015, accusing them of "breach[ing] the duties that they owed to their client . . . in violation of the standards reasonably to be expected of a reasonably competent practitioner." (*Id.* ¶ 40.)  Robbins answered Plaintiff's Complaint, denying liability (ECF No. 27); Seeger also answered (ECF No. 21), and it separately pleaded a Cross-Claim against Robbins.  (ECF No. 22.)  In the Cross-Claim—which incorporates the allegations of the Complaint by reference—Seeger surmises that Plaintiff "seeks to impose liability upon Seeger based upon the alleged wrongful acts of Robbins and under *respondeat superior* and/or agency principles." (*Id.* ¶ 5.)  However, Seeger "denies any and all liability or wrongdoing" and avers that Robbins's actions were "undertaken for [his] personal gain, were not among the services provided by Seeger, and were performed without the knowledge, information or consent of Seeger." (*Id.* ¶¶ 6-7.)  Seeger therefore concludes that Robbins's actions were "outside of the scope of his employment or agency with Seeger." (*Id.* ¶ 7.)  Nevertheless, if and to the extent that Seeger is found liable to Plaintiff, Seeger claims that Robbins should indemnify it (Cross-Claim Count I) or contribute to the damages (Cross-Claim Count II).

Robbins moved to dismiss Seeger's Cross-Claim on January 28, 2016.  (ECF No. 29.)  Seeger opposed Robbins's motion (ECF No. 30), and Robbins replied (ECF No. 31).  The matter is ripe for adjudication.

## II.  Standard of Review

"Under Federal Rule of Civil Procedure 12(b)(6), a cross-claim defendant may move the court to dismiss a cross-claim for 'failure to state a claim upon which relief can be granted.'" *Williams ex rel. Estate of Williams v. United States*, 469 F. Supp. 2d 339, 341 (E.D. Va. 2007).

In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the cross-claimant. *Id.*; *cf. Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded [cross-claim] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A [cross-claim] that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a [cross-claim] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

### A. The Law of Tort Indemnity and Contribution

Seeger has cross-claimed against Robbins for indemnity or, in the alternative, for contribution. Such a cross-claim is authorized by Rule 13(g) of the Federal Rules of Civil Procedure, which provides that a pleading may "state as a cross[-]claim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action" and that such a cross-claim may "include a claim that the coparty is or may be liable to the cross-claimant for *all or part of a claim asserted in the action against the cross-claimant*" (emphasis added).

Under Maryland law, a defendant may seek tort indemnity "only when its liability is passive or secondary, which liability is rooted in the concept of imputed or constructive fault." *Erson v. Int'l Special Attractions, Ltd.*, Civ. No. DKC 13-1625, 2014 WL 3055554, at *7 (D. Md. July 1, 2014) (quoting *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985)); *see also Hejazi v. Oliveri & Assocs., LLC*, Civ. No. CCB-14-02974, 2015 WL 6750793,

4

at *3 (D. Md. Nov. 5, 2015) ("It is 'well established under Maryland law that one who is guilty of active negligence cannot obtain tort indemnification.'" (quoting *Franklin v. Morrison*, 711 A.2d 177, 187 (Md. 1998))). The availability of indemnity often turns on the nature of the legal relationship between the would-be indemnitor and indemnitee. *See Canjura v. Able Serv. Contractors, Inc.*, 866 F. Supp. 258, 261 (D. Md. 1994) ("Indemnification is appropriate if there is a legal relationship mandating it, *e.g.*[,] contract or *respondeat superior* . . . ." (emphasis added)). Indemnity may lie in the employment relationship: "[a]n employer who is liable for a tort committed by an employee under the doctrine of *respondeat superior* may, in the absence of active, independent negligence on the part of the employer, recover the full amount of its loss from the employee." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 135 (Md. Ct. Spec. App. 1996), *aff'd*, 695 A.2d 153 (Md. 1997).

Unlike indemnity, which is rooted in common-law principles, contribution is a creature of statute. The Maryland Uniform Contribution Among Joint Tort-Feasors Act ("UCATA") provides for a "right of contribution . . . among joint tort-feasors," *i.e.*, "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Md. Code Ann., Cts. & Jud. Proc. §§ 3-1401, -1402. Contribution may apply in cases of common liability, with joint tortfeasors responsible for the same damages "even though their liability may rest on different grounds." *Certain Underwriters at Lloyd's, London v. R.J. Wilson & Assocs., Ltd.*, Civ. No. CCB-11-1809, 2013 WL 3224999, at *4 (D. Md. June 25, 2013) (quoting *Parler & Wobber v. Miles & Stockbridge, P.C.*, 756 A.2d 526, 534 (Md. 2000)). While UCATA does not measure the tortfeasors' comparative fault, *see Franklin*, 711 A.2d at 189, neither does it apply to defendants

whose liability is solely vicarious, *see Anne Arundel Med. Ctr., Inc. v. Condon*, 649 A.2d 1189, 1193 (Md. Ct. Spec. App. 1994).

### B.  *Robbins's Motion to Dismiss Cross-Claim (ECF No. 29)*

In its Cross-Claim, Seeger contends that "Seeger was not negligent and denies any and all liability" and that "Robbins acted outside the scope of his employment or agency with Seeger." (ECF No. 22 ¶¶ 10, 12, 16, 18.)  Robbins construes those statements as fatal to Seeger's Cross-Claim: taking the statements as true (for purposes of a Rule 12(b)(6) motion), Seeger was not a "joint tortfeasor with Robbins, as is necessary for an indemnification or contribution claim." (ECF No. 29–1 at 6.)  In other words:  by denying all liability, Seeger has pleaded itself out of its Cross-Claim.  Though clever, Robbins's theory is unavailing.

First, Robbins misapprehends the Court's standard of review at the pleading stage.  While the Court accepts as true all well-pleaded *factual* allegations, it "need not accept the legal conclusions drawn from the facts, and [] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009) (alteration in original) (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), *overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015)).  Seeger's assertions that it was not negligent and that Robbins acted outside the scope of his employment are not "facts" to which the Court owes any deference at the pleading stage; they are conclusions, the accuracy of which cannot plausibly be ascertained (at least in this case) without discovery.  Further, while several of Seeger's more factual assertions (*e.g.*, that it was unaware of and did not consent to Robbins's alleged wrongful acts) would seem to cut against a finding of vicarious liability, those facts—even if true—would not necessarily absolve Seeger of such liability.  The doctrine of *respondeat superior* is complex, and scope-of-

employment, in particular, is a fact-intensive inquiry that takes into account the many, sometimes nonobvious, ways that an employee can advance his employer's interests. *See Tall v. Bd. of Sch. Commr's*, 706 A.2d 659, 667-68 (Md. Ct. Spec. App. 1998) (collecting cases for the proposition that an employer may be found liable for the tortious acts of its employees—even those acts done willfully or recklessly—and explaining that an act may fall within the scope of employment even though forbidden or done in a forbidden manner); *cf. S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 639 n.6 (Md. 2003) ("Whether an individual is an employee and whether that individual's conduct falls within the scope of employment is normally a question for the jury."). Simply put: none of Seeger's rather spare factual allegations is incompatible with a finding of vicarious liability; accordingly, Seeger has not pleaded itself out of its Cross-Claim.

More broadly, the mere fact that Seeger seems to be advancing multiple, inconsistent legal theories is not a legitimate reason for the Court to dismiss the Cross-Claim. On the contrary, "[a]lternative pleading is permitted, just as is inconsistent pleading." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 513 (D. Md. 2007); *see also* Fed. R. Civ. P. 8(d)(2)-(3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. . . . A party may state as many separate claims or defenses as it has, regardless of consistency."); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1283 (3d ed. 2004) ("Under the present federal procedure a party may plead inconsistently, subject only to the requirements of making a reasonable inquiry under the circumstances and interposing a pleading only for proper purposes . . . . [F]requently a party . . . must assert contradictory statements when he or she legitimately is in doubt about the factual background of the case or the legal bases that underlie affirmative recovery or defense."). It takes no great imagination to deduce that Seeger would prefer for the Court (or an eventual

jury) to find that Seeger owes no liability to Plaintiff whatsoever—whether because Robbins, as sole tortfeasor, acted outside the scope of his employment, or for some other reason. But at this early stage in these proceedings, Seeger likely cannot appraise the viability of its affirmative defenses, and so it pleads in the alternative—averring that, *if and to the extent* Seeger is found liable, Robbins (the primarily/actively negligent party) should indemnify it or, at the bare minimum, contribute his proportionate share to whatever judgment is imposed.[3]

As a matter of pleading policy—absent controlling authority dictating a contrary result—the Court is disinclined to embrace a theory that would hamstring employer-defendants like Seeger, forcing them to choose at the outset of litigation between denying liability and attempting to shift or apportion liability. So long as the employer's claims are plausible (though inconsistent) and sufficiently stated to place the employee on notice, *see* Rule 8(a)(2), such claims should be permitted.[4] Here, while Seeger's Cross-Claim could have been more artfully

---

[3] The Court acknowledges that Seeger's claim for contribution seems more attenuated than its claim for indemnity, at least on the face of the pleadings. In his Complaint, Plaintiff avers that both Robbins and Seeger "breached the duties that they owed to their client . . . in violation of the standards reasonably to be expected of a reasonably competent practitioner." (ECF No. 1 ¶ 40.) Yet the specific wrongful acts alleged in the Complaint are attributed to Robbins—and while Plaintiff never expressly invokes *respondeat superior*, that seems to be the theory underlying his inclusion of Seeger as a Defendant. Should Seeger ultimately be found vicariously (but not directly) liable, Seeger's remedy presumably would lie in indemnity—not contribution.

Because neither Defendant has challenged the sufficiency of the Complaint, and because Plaintiff—who is not even party to the present motion practice—has not been called on to defend or expound upon his legal theory, the Court declines to dismiss Seeger's contribution claim at this time. However, Robbins remains free to contest the viability of that claim (and, for that matter, the indemnity claim) at the summary-judgment stage, once discovery has yielded a clearer picture of the nature and extent (if any) of Seeger's putative liability. *Cf. Certain Underwriters at Lloyd's, London v. R.J. Wilson & Assocs., Ltd.*, Civ. No. CCB-11-1809, 2013 WL 3224999, at *4 (D. Md. June 25, 2013) (allowing third-party plaintiff's "somewhat marginal" contribution claim to proceed where third-party plaintiff averred that "to the extent [plaintiff] has been damaged as alleged . . . any such damage was caused by [third-party-defendant] and not by [third-party plaintiff]").

[4] Though not precisely on point, *Fox v. Fidelity First Home Mortgage Co.*, 117 A.3d 76 (Md. Ct. Spec. App. 2015), *cert. denied*, 123 A.3d 1005 (Md. 2015) (unpublished table decision), nicely illustrates the various defensive strategies an employer may adopt when it is sued due to the misconduct of its employees. In *Fox*, the victim of a fraudulent foreclosure rescue scheme sued two perpetrators of the scheme along with Fidelity First, the employer of one perpetrator; the plaintiff later dismissed her claims against the perpetrators and proceeded solely against Fidelity First on the basis of *respondeat superior*. *Id.* at 78. A jury returned a verdict for the plaintiff, and Fidelity First appealed, contending in part that it could not be vicariously liable for its employee's misconduct as the employee's acts fell outside the scope of his employment. *Id.* at 80-81. The Court of Special Appeals of Maryland disagreed and affirmed the jury's verdict. *Id.* at 81. Subsequently, Fidelity First sued the two perpetrators for indemnity. *Id.* at 81-82. The circuit court granted summary judgment to Fidelity First, and the Court of Special Appeals affirmed,

drafted,[5] it is sufficiently intelligible to place Robbins (and, for that matter, Plaintiff) on notice of Seeger's various theories.  The parties will proceed to discovery with eyes wide open.

## IV. Conclusion

For the foregoing reasons, an Order shall enter DENYING Robbins's Motion to Dismiss Cross-Claim (ECF No. 29).

DATED this 15th day of April, 2016.

BY THE COURT:

/s/
James K. Bredar
United States District Judge

---

opining that, while Fidelity First was found vicariously liable for its employee's misconduct in the underlying proceedings, Fidelity First could then look to that employee and his accomplice (the parties truly responsible for the plaintiff's damages) to indemnify it for its losses. *Id.* at 91.  Doubtless, Fidelity First would have *preferred* to be found not liable in the first instance, but indemnity provided it with an escape hatch.  While the procedural posture in this case differs from the posture in *Fox*, Seeger appears to have adopted a similar strategy, denying liability by contesting scope-of-employment while affirmatively advancing claims for indemnity and contribution—a comprehensive approach well-suited to the vagaries of tort litigation.

[5] Seeger seems to acknowledge as much, as it requests an opportunity to amend its Cross-Claim in the event that the Court finds Robbins's argument persuasive.  (*See* ECF No. 30 at 6.)  Though Seeger certainly remains free to move to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court is not persuaded that amendment is essential under these circumstances.